# Illinois Official Reports

## Appellate Court

---

### *People v. Zumot*, 2021 IL App (1st) 191743

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WESAM ZUMOT, Defendant-Appellant |
| District & No. | First District, Sixth Division<br>No. 1-19-1743 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-20899; the Hon. James Michael Obbish, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justice Oden Johnson concurred in the judgment and opinion.<br>Justice Harris dissented, with opinion. |

**OPINION**

¶ 1 In 2002, 19-year-old Wesam Zumot shot and killed his former friend, Adam Montoya, after the two had a falling out stemming from Mr. Zumot's accusation that Mr. Montoya stole a stereo sound system from Mr. Zumot's car. At the ensuing bench trial, the trial court rejected Mr. Zumot's assertion that he had acted in self-defense, found him guilty of first degree murder, and imposed the minimum statutorily permissible sentence of 45 years in prison—20 years for the murder (730 ILCS 5/5-8-1(a)(1)(a) (West 2002)) plus a mandatory 25-year firearm enhancement for discharging the weapon that proximately caused Mr. Montoya's death (730 ILCS 5/5-8-1(a)(1), (a)(1)(d)(iii) (West 2002)). We affirmed Mr. Zumot's conviction on direct appeal. *People v. Zumot*, No. 1-05-1068 (2009) (unpublished order under Illinois Supreme Court Rule 23).[1]

¶ 2 Mr. Zumot now appeals the summary dismissal of his *pro se* postconviction petition. Relying on evolving societal standards governing the sentencing of youthful offenders, he argues the trial court failed to properly consider his youth and its attendant circumstances, including his rehabilitative potential. Mr. Zumot contends that, as applied to him, a 45-year *de facto* life sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 3 For the reasons that follow, we find that Mr. Zumot has met the low threshold requirement of stating the gist of a constitutional violation. We reverse the circuit court's dismissal order and remand for second-stage proceedings on his petition.

## I. BACKGROUND

¶ 4

¶ 5 A two-day bench trial was held in this matter in fall 2004. The evidence presented was summarized as follows in this court's order on direct appeal:

> "The undisputed evidence established that defendant and the victim Adam Montoya were friends at one time and that defendant pleaded guilty to aggravated assault based upon an incident in February 12, 2001, where defendant allegedly pointed a gun at the victim. Subsequently, in the early morning hours of July 16, 2002, defendant repeatedly shot a gun from the window of his pickup truck towards an adjacent Blazer, which had multiple occupants, including the victim. Ultimately, the victim was shot three times and died as a result of his wounds. At trial, the State and defendant offered different versions of the events that led to the shooting.
>
> The State, through the testimony of [four occurrence witnesses], represented that defendant drove next to the Blazer, produced a gun, and shot multiple times at the victim as he sat in the front passenger seat of the Blazer.
>
> * * *

---

[1]The defendant's surname occasionally appears as Zumut, rather than Zumot, in the record and that is the spelling used by the Illinois Department of Corrections. Mr. Montoya's given name appears alternately as Adan or Adam in the record. For consistency, we have maintained here the spellings that the court used in the order that we issued on Mr. Zumot's direct appeal.

The defense, through the testimony of defendant, represented that defendant shot at the victim only after the victim pointed a gun at defendant. Defendant testified that he used to be friends with the victim, but stopped being friends with the victim after the victim stole his radio, compact discs, and speakers from [defendant's] car. Defendant explained that he saw the stolen items in the victim's brother's home. According to defendant, after he asked the victim to return the items, the victim denied taking the items and threatened to hurt defendant." *Zumot*, slip order at 2, 6.

¶ 6 The trial court found the testimony of the State's four eyewitnesses to be "consistent, unimpeached and credible" and rejected Mr. Zumot's theory of self-defense, noting that "[n]othing to corroborate the defendant's version whatsoever was presented." The court found Mr. Zumot guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) and denied his motion for a new trial.

¶ 7 According to the presentence investigation (PSI) report in this case, Mr. Zumot reportedly had a good childhood and never suffered abuse or neglect. His parents, immigrants from Jordan, were employed as a factory worker and a homemaker and had eight children, including Mr. Zumot. Mr. Zumot told the investigator that his teachers continued to pass him each year, even though he had never learned to read or write. He was a junior in high school when he decided to leave school because he was being harassed by individuals trying to recruit him to their gang. Mr. Zumot then worked full-time for his brother's towing business for one year. A month after the company went out of business, Mr. Zumot was incarcerated on the aggravated assault charge stemming from his having threatened and pointed a gun at Mr. Montoya on February 12, 2001.

¶ 8 At the sentencing hearing on November 23, 2004, the trial court heard from Mr. Montoya's mother and sister, who explained what his loss meant to them and to Mr. Montoya's two young children, as well as from Mr. Zumot's fiancée, who testified that she had known him since he was 10 years old and described him as a kind person who helped his family and elderly neighbors. The State urged the court to focus on the ruthless nature of the shooting and pointed out that there was nothing in Mr. Zumot's family life that could explain why he had committed such a violent crime. Defense counsel noted that, at the time of the shooting, Mr. Zumot was an unmarried, uneducated young man with one misdemeanor conviction, whose only employment had been with his brother's towing company. Counsel asked the court to exercise what limited discretion was available to it under the statutory scheme in Mr. Zumot's favor. Twice during his arguments in mitigation, Mr. Zumot's counsel stated that Mr. Zumot was 20 years old at the time of the shooting. Mr. Zumot was, in fact, 19 years old at that time.

¶ 9 Having considered this evidence, the trial court judge began by addressing the inadequacy of the criminal justice system as a means of making grieving families whole again after the loss of a loved one, stating, "[i]f I had that power, I certainly would use it, and I suspect that if Mr. Zum[o]t had that power now, he's a couple years older and maybe realizes just what his actions have done, maybe he would try to do something himself." The judge noted that Mr. Zumot's parents were "good, hardworking people" and acknowledged that a tragedy had occurred in their lives as well. The judge then explained why, in his view, a life sentence was simply not appropriate in this case:

> "The State's points out [*sic*] the defendant actually is eligible to [receive] life in prison. I've looked at the aggravating and mitigating factors here. I certainly don't think

that that's, that that would be an appropriate sentence. It won't bring Mr. Montoya back.

The defendant does not have a significant criminal background to justify such a sentence. He really only has one prior case and that involved Mr. Montoya. For whatever reason, whether it's true or not, it really doesn't matter. He certainly appears to believe that Mr. Montoya was responsible for his loss of some property. He acted out inappropriately. And I think in 2001, when he threatened Mr. Montoya with a weapon, he pled guilty to that charge and was placed on conditional discharge.

And then '02, without any further provocation that this Court is aware of, he decided to act out again, and this time he discharged the weapon rather than just threaten Mr. Montoya with it. And *** tragically he was able to fire the fatal bullets into the body of Mr. Montoya.

But he doesn't have a significant criminal history. I don't think an extended term sentence is appropriate either."

¶ 10 The judge went on to explain that, although he was prohibited from imposing a sentence of less than 45 years, he also felt that this sentence was appropriate. Mr. Zumot moved the court to reconsider the sentence as excessive, pointing out that he had no significant criminal record and arguing that his rehabilitative potential had not been given adequate consideration by the court. His motion was denied.

¶ 11 On direct appeal, Mr. Zumot unsuccessfully argued that the evidence presented at trial had been insufficient to support his conviction, the trial court had relied on improper inferences, and the trial court's expressions of bias against a defense witness had caused Mr. Zumot's counsel not to call that witness to testify. *Zumot*, slip op., *passim*.

¶ 12 On June 12, 2019, Mr. Zumot, acting *pro se*, filed what he styled as a motion for leave to file a successive postconviction petition. Because this was Mr. Zumot's first request for postconviction relief, however, the circuit court appropriately treated the filing as an initial petition. Mr. Zumot asserted in his petition that his 45-year *de facto* life sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Quoting extensively from scholarly articles and recent court opinions recognizing that young adults are often, like juveniles, more impulsive and susceptible to peer pressure than mature adults, Mr. Zumot argued that "the same indicia of youth that made mandatory life imprisonment without parole unconstitutional for those under the age of 18 in [*Miller v. Alabama*, 567 U.S. 460 (2012),] also applie[d] to 19-year-olds" like him. Mr. Zumot pointed out both that other countries, including Germany, Sweden, and the Netherlands, have extended protections afforded to juvenile offenders to young adult offenders and that the Illinois legislature recently established a system of parole review, applicable prospectively, for individuals who were under the age of 21 at the time of their offenses (Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110)). If he were sentenced today, Mr. Zumot noted, he would be eligible for parole after 20 years of incarceration.

¶ 13 Mr. Zumot attached to his petition the transcript of his sentencing hearing; various certificates of recognition and completion related to courses he has attended while incarcerated; a 2015 article titled "Young Adults in Conflict with the Law: Opportunities for Diversion," written by policy research analyst Kanako Ishida for the Juvenile Justice Initiative; and a copy of Public Act 100-1182, the law establishing parole for young-adult offenders.

¶ 14     In its written order summarily dismissing the petition, the circuit court acknowledged that, following our supreme court's decision in *People v. Buffer*, 2019 IL 1222327, ¶ 40, Mr. Zumot's 45-year sentence "clearly qualifies as *de facto* life." The court nevertheless concluded that the as-applied constitutional challenges raised in his petition were "frivolous and patently without merit." The court explained that Mr. Zumot could not assert such a challenge under the eighth amendment because he was over the age of 18. The court found that his proportionate penalties claim failed too, both because he had failed to allege sufficient detail in his petition establishing a nexus between the scientific developments he cited and his own neurological development at the time of his crime and because, "[e]ven if the evolving science on juvenile maturity demonstrated that [Mr.] Zumot's brain was similar to that of a juvenile, he [was] not entitled to relief from his sentence pursuant to the proportionate penalties clause," as unlike the defendants in the cases he relied on in his petition, Mr. Zumot had not been a "mere lookout[ ] who did not handle a gun or help plan the killing[ ]."

¶ 15                                    II. JURISDICTION

¶ 16     The circuit court entered its written order summarily dismissing Mr. Zumot's postconviction petition on July 19, 2019, and Mr. Zumot timely filed his notice of appeal from that order on August 13, 2019. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 606 and 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 17                                     III. ANALYSIS

¶ 18     On appeal, Mr. Zumot asks us to reverse the circuit court's order summarily dismissing his *pro se* postconviction petition. Mr. Zumot argues that his petition set forth an arguable basis for a claim that a *de facto* life sentence of 45 years for a crime he committed when he was 19 years old was unconstitutional as applied to him, under both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 19     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a framework for an incarcerated individual to collaterally attack his or her conviction by establishing the substantial denial of a constitutional right in the trial or sentencing that resulted in that conviction. 725 ILCS 5/122-1(a)(1) (West 2018). Claims are limited to those that were not, and could not have been, previously litigated. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Proceedings under the Act occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines, without input from the State, whether a petition is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2018). At the second stage, the court appoints counsel to represent the defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122-4, 122-5 (West 2018). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation does the defendant then proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2018).

¶ 20     Mr. Zumot's petition was dismissed at the first stage. Our supreme court has made clear that, to survive first-stage scrutiny, a petition need only state the "gist" of a constitutional claim.

*People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Formal legal argument and citation of authority are not required (*id.*), and all well-pleaded facts that are not positively rebutted by the record must be taken as true (*People v. Romero*, 2015 IL App (1st) 140205, ¶ 26). A petition may be summarily dismissed as "frivolous or patently without merit" only when it has "no arguable basis either in law or in fact"—*i.e.*, where the petitioner's claim relies "on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9. We review the summary dismissal of a postconviction petition *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 21                                   A. Mr. Zumot's Eighth Amendment Challenge

¶ 22        We first address Mr. Zumot's eighth amendment challenge. The eighth amendment to the United States Constitution prohibits governments from imposing "cruel and unusual punishments." U.S. Const., amend. VIII. In a progression of cases involving the sentencing of juvenile offenders, the United States Supreme Court has held that the eighth amendment prohibits capital sentences for juveniles who commit murder (*Roper v. Simmons*, 543 U.S. 551, 578-79 (2005)), mandatory life sentences without the possibility of parole for juveniles who commit nonhomicide offenses (*Graham v. Florida*, 560 U.S. 48, 82 (2010)), and mandatory life sentences without the possibility of parole for juveniles who commit murder (*Miller v. Alabama*, 567 U.S. 460, 489 (2012)). These cases reflect society's evolving recognition that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471. First, juveniles generally "lack *** maturity and [have] an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." (Internal quotation marks omitted.) *Id.* Second, because of their "limited contro[l] over their own environment" and their general inability to remove themselves from crime-producing settings, juveniles "are more vulnerable *** to negative influences and outside pressures." (Internal quotation marks omitted.) *Id.* And third, juveniles have characters that are not as "well-formed" as those of adults; their traits are "less fixed," and their "actions [are] less likely to be evidence of irretrievabl[e] depravit[y]." (Internal quotation marks omitted.) *Id.*

¶ 23        Following *Miller*, courts sentencing juveniles must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. In *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), the Court held that this new substantive rule of constitutional law applies retroactively. Our own supreme court has gone even further, finding that *Miller* applies regardless of whether the life sentence imposed is actual or *de facto*, mandatory or discretionary. *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10; *People v. Holman*, 2017 IL 120655, ¶ 40.

¶ 24        We agree with the State, however, that these protections afforded by the eighth amendment apply directly only to juveniles. As our supreme court has noted, the United States Supreme Court "has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18." *People v. Harris*, 2018 IL 121932, ¶ 60; see also *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 31 (noting that "[r]ecently, and forcefully, our supreme court reaffirmed under 18 as the age cutoff for juvenile sentencing protections in the eighth amendment context"). This cutoff was established "not based primarily on scientific research" (*Harris*, 2018 IL 121932, ¶ 60) but because the Court felt that "a line must be drawn" and "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood" (*Roper*, 543 U.S. at 574). Because Mr. Zumot was 19 years old at the time of

his crime, he failed to state the gist of a claim that a *de facto* life sentence violated his rights under the eighth amendment.

¶ 25                     B. Mr. Zumot's Proportionate Penalties Challenge

¶ 26     The proportionate penalties clause of the Illinois Constitution specifically provides that "[a]ll penalties shall be determined according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship.*" (Emphasis added.) Ill. Const. 1970, art. I, § 11. Our supreme court has explained that this unique emphasis on rehabilitative potential provides "a limitation on penalties beyond those afforded by the eighth amendment." *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41. And it has twice specifically acknowledged that young adult offenders are "not necessarily foreclosed" from raising as-applied challenges to life sentences based on the evolving science on juvenile maturity and brain development under the proportionate penalties clause. *Harris*, 2018 IL 121932, ¶¶ 46, 48 (citing *People v. Thompson*, 2015 IL 118151).

¶ 27     In *Thompson*, the court concluded that the as-applied, youth-based sentencing claim of an 18-year-old offender would be more appropriately raised in postconviction proceedings rather than on direct appeal. *Thompson*, 2015 IL 118151, ¶¶ 43-44. The court reached the same conclusion a few years later in *Harris*, when it was asked to consider the as-applied, youth-based sentencing claim of a defendant who, like Mr. Zumot, was 19 years old at the time of his crime. *Harris*, 2018 IL 121932, ¶ 48. The court has thus opened the door to the possibility that a young-adult offender might demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was "cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009) (stating what is required to succeed on a proportionate penalties claim). Neither in *Thompson* nor in *Harris*, however, did the court outline the precise parameters of such a claim.

¶ 28     The State argues on appeal that summary dismissal was proper here because "a review of [Mr. Zumot's] petition reveals nothing more than cursory facts about himself," including "his post-sentencing behavior, and general references to brain science in young adults, without any nexus between the two." The State insists that such allegations "fall short of the factual detail necessary to present an as-applied *Miller*-based proportionate penalties challenge."

¶ 29     The State is correct that a postconviction petition "must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." (Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 10. Our supreme court has made clear, however, that a petitioner "need not set forth [a] claim in its entirety" and "need only present a limited amount of detail." (Internal quotation marks omitted.) *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To require "full or complete pleading" would be, the court has explained, "at odds with the 'gist' standard itself since, by definition, a 'gist' of a claim is something less than a completely pled or fully stated claim." *Id.* at 245. The justification for this lenient standard is that a *pro se* petitioner will "in all likelihood be unaware of the precise legal basis for his claim or the legal elements of that claim." *Id.* And in many cases, he will also "be unaware that certain facts, which in his mind are tangential or secondary, are, in fact, critical parts of a complete and valid constitutional claim." *Id.*

¶ 30    In support of its argument that Mr. Zumot's petition lacked sufficient factual detail, the State quotes our supreme court's decision in *Harris*, where the court rejected the notion that it could decide the merits of a defendant's as-applied, youth-based claim on direct appeal where no evidentiary hearing on the matter had been held and the record contained "only basic information about the defendant, primarily from the [PSI] report." *Harris*, 2018 IL 121932, ¶ 46. What was needed instead, the court concluded, was "evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applie[d] to [the] defendant's specific facts and circumstances." *Id.* What the State repeatedly fails to appreciate is that, unlike the defendant in *Harris*, Mr. Zumot is not trying to *prove* the merits of his as-applied proportionate penalties claim. Unlike *Harris*, which was a direct appeal, this case is before us on the dismissal of a postconviction petition at the first stage. To advance to the second stage, a petitioner need only state the gist of a constitutional violation, which may then be fleshed out in further proceedings. *People v. Tate*, 2012 IL 112214, ¶ 19.

¶ 31    Mr. Zumot has stated such a gist here. We disagree with the circuit court's observation that Mr. Zumot "fail[ed] to draw any connection" between his own particular circumstances and studies showing that young adults are more like juveniles than fully mature adults. Mr. Zumot drew exactly that connection in this paragraph from his petition:

> "Petitioner contends that through his self-Rehabilitation he's maintained a job as a porter in Menard Correctional Center in the West House in 2010, then went to work as a porter in segregation in 2010 or 2011, also I work[ed] in the kitchen in 2012 while I was in Menard C.C. Petitioner works as a porter in the Hill Correctional Center since [M]ay 2019, then I received some certificates such as Good Conduct on April 4, 2012, Koinonia House National Ministries of Recognition from June 11-12, 2016, 25 Sessions of Thinking for a Change-Integrated Cognitive Behavior Change program, A-Grade Incentive, and Hiv/Aids Health Awards see Exhibits. These pursuits and achievements coincides with the scientific evidence and the United States Supreme Court's holdings and the evolving field of jurisp[r]udence by Illinois Courts that juveniles and young adults possess 'Diminished Culpability' and 'Greater Prospects for Reform.' "

These are facts that can be corroborated, are objective in nature, and bear directly on the Supreme Court's observation in *Miller* that a hallmark of youth is the lack of a fully formed character—traits that are not fixed and a corresponding capacity for meaningful rehabilitation. *Miller*, 567 U.S. at 471.

¶ 32    We reject the State's argument, based on *Holman*, 2017 IL 120655, ¶ 47, that we may not consider the facts that Mr. Zumot set forth in his petition because any inquiry must be "backwards looking," making consideration of a defendant's postsentencing conduct improper. The inquiry that the court made in *Holman* was a different one than the one that we are making here and the requirement that any inquiry be backwards looking from the time of sentencing is simply not applicable here.

¶ 33    The petitioner in *Holman* was a juvenile under the age of 18 at the time of his crime who sought leave to file a successive postconviction petition. *Id.* ¶ 27. Our supreme court considered in that case whether the petitioner had shown cause and prejudice to assert a claim that the trial court's failure to consider the factors set out in *Miller*, 567 U.S. at 489, should have precluded it from imposing a life sentence. When it made the statements quoted by the

State here, the *Holman* court was considering whether the trial court had actually considered those factors at the time it sentenced the petitioner. That, of course, required it to consider only what was before the sentencing judge at the time of sentencing.

¶ 34 Here, Mr. Zumot's postsentencing conduct is not being considered as part of an inquiry into the sentencing judge's application of the *Miller* factors but rather as evidence that may be relevant to whether *Miller* applies in the first place to this particular 19-year-old offender. Where, as here, the initial inquiry is whether a young adult over the age of 18 may have exhibited the characteristics of a juvenile because he possessed rehabilitative potential incompatible with the imposition of a life sentence, his postsentencing conduct may be relevant to such a determination and, if so, should be considered. See *Ruiz*, 2020 IL App (1st) 163145, ¶ 52 (recognizing that these are distinct inquiries and noting "if, and only if, the young adult makes [the showing that he is the equivalent of a juvenile] then the trial court goes on to consider whether the initial sentencing hearing complied with *Miller*").

¶ 35 We also note that, in addition to the allegations and supporting documentation of Mr. Zumot's petition, the trial court record also supports his claim that he was the equivalent of a juvenile because he had rehabilitative potential that was constitutionally incompatible with the imposition of a life sentence. See *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 14 (noting that "this court must review the entire postconviction petition, in light of the trial record, to determine whether it states the gist of a constitutional claim"). The sentencing judge in this case indicated that he viewed Mr. Zumot as a young person who had done something impulsive and who may not have had the maturity to fully appreciate the consequences of his actions. The judge twice described Mr. Zumot's conduct as "acting out" and expressed his hope that Mr. Zumot, now that he was "a couple years older and maybe realizes just what his actions have done" would want to alleviate the trauma this shooting had caused to both the victim's family and to Mr. Zumot's own family. The judge also expressly stated that Mr. Zumot did not deserve a natural life sentence.

¶ 36 These statements are of particular significance because we generally defer to the trial court's determination of a proper sentence. Having presided over the trial and sentencing, the trial court judge is in a superior position to assess things like "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). Here, the sentencing judge's remarks made on the record provide further support for the gist of a constitutional claim stated in Mr. Zumot's petition.

¶ 37 We also reject the circuit court's alternative basis for summarily dismissing Mr. Zumot's proportionate penalties claim—that, even if Mr. Zumot could demonstrate that his brain function was similar to that of a juvenile, his degree of participation in the crime he was convicted of operates as a bar to his proportionate penalties claim. On this point, the circuit court relied on *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020). In *House*, as here, this court considered whether a young-adult offender had stated the gist of an as-applied, youth-based sentencing challenge. *Id.* ¶ 46. Although the defendant was not a juvenile, the *House* court noted that "his young age of 19 [was] relevant under the circumstances of [the] case" to a determination of whether his sentence was disproportionate. *Id.* So too were the facts that the defendant in that case had only served as a lookout, was found guilty of murder on a theory of accountability, and had received the same sentence of mandatory life in prison as the actual shooter. *Id.* A 17-year-old codefendant with similar culpability, on the other hand, had been sentenced as a juvenile and had already been

released from prison. *Id.* This court was especially troubled by the fact that the sentence the defendant received was mandatory and the judge was thus "precluded from considering the goal of rehabilitation," which it found "especially relevant" under the circumstances of that case. *Id.* ¶ 64.

¶ 38    As Mr. Zumot points out, after the decisions in *Harris* and *House*, a case-law split has emerged on whether a defendant's degree of culpability, including participation as principal, can preclude him or her from raising an as-applied, youth-based proportionate penalties claim. In some cases, this court has said yes, essentially concluding that the facts of a case must align precisely with those in *House* for a defendant to proceed on such a claim. See, *e.g.*, *People v. Carrion*, 2020 IL App (1st) 171001, ¶¶ 30, 35 (holding that a 19-year-old offender could not establish prejudice for the filing of a successive postconviction petition because he had acted as a principal); *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 3, 40-41 (same; 18-year-old). In others we have rejected that notion. See, *e.g.*, *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 31 (noting that nowhere did the *House* court suggest "that a defendant's degree of participation in a crime *** should utterly disqualify him or her from raising such a claim"); *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 35 (reversing the summary dismissal of a first-stage postconviction petition filed by a 19-year-old offender who had acted as a principal).

¶ 39    We may receive guidance on this matter soon, as our supreme court recently allowed the State's appeal in *House*. At present, and despite the State's disagreement with their holdings, the existence of cases like *Daniels* and *Johnson* precludes a finding that Mr. Zumot's status as a principal offender categorically prevents him from stating the gist of an as-applied, youth-based proportionate penalties claim. See *People v. Carter*, 2021 IL App (1st) 180191-U, ¶ 58[2] (rejecting the notion that a 20-year-old offender's postconviction petition was "based on an indisputably meritless theory" where "[t]here are now a number of Illinois appellate court opinions reversing first-stage summary dismissals and denials of motions seeking leave to file a successive postconviction petition" on the same theory).

¶ 40    Finally, we reject the argument made by the State and accepted by the dissent that the trial court in this case did in fact consider the *Miller* factors when it sentenced Mr. Zumot in 2004—years before *Miller* or *Harris* would be decided—simply because information touching on those factors was included in the PSI report submitted at sentencing. We agree with Mr. Zumot that "[u]ltimately, being aware of evidence relevant to the *Miller* factors is wholly distinct from considering those factors as mitigating, or carefully considering the prospect of a defendant's rehabilitative potential."

¶ 41    Moreover, we certainly cannot assume, as the State asks us to, that the sentencing judge considered the *Miller* factors and concluded that Mr. Zumot should be given a life sentence, where the trial court in fact expressly rejected the appropriateness of such a sentence for Mr. Zumot, saying explicitly that he "certainly" did not think that a life sentence was "appropriate." The judge went on to impose a 45-year sentence, but he did so before our supreme court held in *Buffer*, 2019 IL 122327, ¶¶ 26-27, 40-41, that a sentence in excess of 40 years is, for all practical purposes, no different than a life sentence. The sentencing judge clearly did not believe Mr. Zumot should spend the rest of his natural life in prison and, as our supreme court

---

[2]Effective January 1, 2021, Illinois Supreme Court Rule 23(e) now provides that nonprecedential orders of this court may be cited for persuasive purposes.

acknowledged in *Buffer*, that is exactly what is likely to happen to him given the lengthy term-of-years sentence he received.

¶ 42 To the extent that the dissent and the State suggest that Mr. Zumot's age was already appropriately considered at sentencing, we also note that it is not even clear that the trial court knew Mr. Zumot's correct age at the time of the crime, since twice during his arguments in mitigation, Mr. Zumot's counsel stated that Mr. Zumot was 20 years old at the time of the shooting when Mr. Zumot was, in fact, 19 years old at that time.

¶ 43                                IV. CONCLUSION

¶ 44 In sum, Mr. Zumot has stated the gist of a claim that, as applied to him, a *de facto* life sentence imposed absent consideration of the *Miller* factors violated the proportionate penalties clause of the Illinois Constitution. This claim has an arguable basis in the law and finds support both in the facts alleged in Mr. Zumot's petition and in the trial court record. Whether, with the assistance of postconviction counsel, Mr. Zumot can make a substantial showing in support of this claim is a consideration that must be reserved for second-stage proceedings. We reverse the circuit court's summary dismissal of Mr. Zumot's petition and remand for second-stage proceedings.

¶ 45 Reversed and remanded.

¶ 46 JUSTICE HARRIS, dissenting:

¶ 47 Even if we consider Mr. Zumot to be a juvenile, as he argues for in his petition, the record does not support his constitutional claims. Therefore, I respectfully dissent.

¶ 48 In *People v. Holman*, 2017 IL 120655, ¶ 37, our supreme court noted that a juvenile's life sentence is constitutionally permitted under *Miller* where the trial court considered his or her " 'age and age-related characteristics and the nature of their crimes' as 'mitigating circumstances.' " *Id.* (quoting *Miller*, 567 U.S. at 489). *Miller* mandated "only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Miller*, 567 U.S. at 483. Thus, when a juvenile defendant raises a *Miller* claim, courts must determine whether the trial court considered his youth and its attendant characteristics when it sentenced him. *Holman*, 2017 IL 120655, ¶¶ 46-47. Those characteristics include (1) defendant's age and evidence of his immaturity, (2) his family and home environment, (3) his degree of participation in the crime, (4) his incompetence, and (5) his potential for rehabilitation. *Id.* ¶ 46. If the record shows that the trial court made this consideration, the juvenile defendant's sentence "passes constitutional muster under *Miller*." *Id.* ¶ 50.

¶ 49 At Mr. Zumot's sentencing hearing, evidence was presented of his age, that he had a job and a loving, two-parent family, and his lack of serious criminal background. The trial court explicitly stated that it considered Mr. Zumot's presentence investigation report and the factors in aggravation and mitigation. It further noted that, when he shot the victim, Mr. Zumot acted in anger because he believed the victim stole his property and "without any further provocation." About a year-and-a-half before the shooting, Mr. Zumot approached the victim with a gun and threatened to kill him. The court noted, however, that "[t]his time he discharged

- 11 -

the weapon rather than just threaten Mr. Montoya with it." The record indicates that the trial court did not believe the shooting was spontaneous as Mr. Zumot described.

¶ 50    The trial court acknowledged that 45 years was the minimum sentence it could impose; however, it explicitly found that, "[i]n this particular case, it also works out to be appropriate in that I find that the sentence that should be imposed here is, in fact, 45 years in the Illinois Department of Corrections." After carefully considering the relevant factors, the trial court in its discretion concluded that a sentence of 45 years' imprisonment was proper. As such, Mr. Zumot's sentence "passes constitutional muster under *Miller*." See *id.*

¶ 51    To the extent that Mr. Zumot argues a constitutional violation because the trial court failed to make explicit findings, *Miller* imposes no such factfinding requirement. In the very recent case of *Jones v. Mississippi.*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1319 (2021), the United States Supreme Court held that *Miller* does not require a "separate factual finding of permanent incorrigibility" before sentencing a juvenile defendant to a sentence of life without parole. The determination in *Jones* is in line with established Illinois sentencing law. See *People v. La Pointe*, 88 Ill. 2d 482, 493 (1981) (finding that the proportionate penalties clause of the Illinois Constitution does not require a sentencing judge to make specific findings regarding the defendant's rehabilitative potential); *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting that "[t]he trial judge is not required to detail precisely for the record the exact process by which she determined the penalty *** nor is she required to make an express finding that defendant lacked rehabilitative potential").

¶ 52    For these reasons, I would affirm the trial court's dismissal of Mr. Zumot's postconviction petition.