2022 IL App (1st) 1200055-U

No. 1-20-0055

Second Division
August 30, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 91 CR 00259 |
| MICHAEL BELL, | ) ) ) | Honorable Kenneth J. Wadas |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's summary dismissal of defendant's postconviction petition alleging violation of the eighth amendment of the United States Constitution is affirmed where defendant was eighteen years old at the time of the offense. The summary dismissal of defendant's claim under the Proportionate Penalties Clause of the Illinois Constitution is also affirmed where he failed to provide this court with a complete record to review his claims.

¶ 2    Following a jury trial, defendant-appellant, Michael Bell, was found guilty of first-degree murder, home invasion, aggravated battery with a firearm, aggravated criminal sexual assault,

aggravated kidnapping, armed robbery, and aggravated battery. He was sentenced to natural life imprisonment without parole. After his sentence was affirmed on direct appeal, defendant filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1, *et seq.* (West 2018)), alleging that his status as a then-18-year-old offender required reconsideration of his natural life sentence. Defendant now appeals from the circuit court's summary dismissal of his petition, arguing that his sentence violates the eighth amendment and the proportionate penalties clause as applied to him. For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4       At the outset, we note that our review of the record on appeal reveals that various parts of the common law record and report of proceedings are missing in violation of Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021). We summarize the procedural history of this case to the extent we can glean from the incomplete record and from this court's order affirming defendant's convictions on direct appeal. *People v. Bell*, No. 1-92-2090, 267 Ill. App. 3d 1073 (1994) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5                                        A. Trial Proceedings

¶ 6       The evidence at trial established that on November 5, 1990, defendant, carrying a loaded handgun, climbed a ladder and entered the home of John Colbert through a second-story window. Defendant had previously been romantically involved with Colbert's daughter, Sojourner. Once inside the house, defendant obtained a knife and began to look for Sojourner. Sojourner's younger brother, Akelo, was awakened in his bed by defendant, who then held a knife to Akelo's throat and threatened him to remain quiet. Following a struggle, defendant cut Akelo's throat and left the room. Akelo began to yell that "[Defendant] was in the house."

¶ 7    John awoke, left his bedroom, and was shot multiple times by defendant. John's wife, Grace Colbert, was also struck by a bullet in the chest. Defendant reloaded his gun and demanded that the entire family assemble in the bedroom. He threatened that "he had a bullet for Sojourner and one for himself."

¶ 8    Defendant demanded money and the keys to the family car, and then ordered Sojourner to come with him. After obtaining those items, he pulled a bedroom phone from the wall and left the house with Sojourner in tow. Defendant drove Sojourner to a nearby motel and proceeded to sexually assault her. The police were eventually able to locate the two, and defendant was arrested at the motel. John died of his injuries later that day.

¶ 9    The jury found defendant guilty of first-degree murder, aggravated criminal sexual assault, home invasion, aggravated battery with a firearm, aggravated kidnapping, and armed robbery. The State sought the death penalty. However, the court found that the imposition of a death sentence was barred by the presence of a mitigating factor, namely that defendant was under the influence of an extreme mental or emotional disturbance at the time of the offenses. Ill. Rev. Stat. 1990, ch. 38 sec. 9-1(b)(6), recodified at 720 ILCS 5/9-1(b)(6) (West 2018).

¶ 10    At the conclusion of the sentencing hearing, where the parties presented factors in aggravation and mitigation, the court found defendant eligible for a life sentence pursuant to Ill. Rev. Stat. 1990, ch. 38, sec. 9-1-(b)(6), recodified at 720 ILCS 5/9-1(b)(6) (West 2018). The trial judge sentenced defendant to natural life in prison without parole for first degree murder; a 30-year consecutive sentence for aggravated criminal sexual assault; and a 30-year concurrent sentence for home invasion, aggravated battery with a firearm, aggravated kidnapping, and armed robbery.

¶ 11                                    B. Direct Appeal

¶ 12     On direct appeal, defendant raised various challenges to his sentence, including whether the trial court abused its discretion by failing to consider his potential for rehabilitation and various other mitigating factors. We noted that factors in mitigation, including defendant's emotionally disturbed state, as well as his rehabilitative potential, had been argued and considered by the court prior to the imposition of defendant's natural life sentence.

¶ 13     We therefore rejected defendant's arguments, except to the extent that the record on appeal incorrectly reflected a sentence for aggravated kidnapping where the trial court failed to pronounce a sentence on that single count. Thus, we affirmed defendant's life sentence but remanded the case solely for sentencing on the aggravated kidnapping conviction. The trial court subsequently entered a sentence of 15 years for the aggravated kidnapping count with credit for time already served.

¶ 14                              C. Postconviction Proceedings

¶ 15     On October 1, 2019, defendant, represented by private counsel, filed a petition for postconviction relief raising two claims. First, he alleged that his natural life sentence for a crime he committed at 18 years of age violated the eighth amendment's ban on cruel and unusual punishments.[1] Defendant conceded that although his age and psychological status at the time of the crime were discussed at sentencing, the sentencing court could not have been aware of changing scientific evidence and legal jurisprudence related to juvenile brain development and prospects for rehabilitation. Defendant further alleged that if he had been able to present such

---

[1] We observe that, within his eighth amendment claim, defendant cited to *People v. House*, 2019 IL App (1st) 110580-B, a proportionate penalties clause case, and various Illinois legislative amendments cited therein in order support his claim that *Miller*'s bright-line rule of 18 years has been "called *** into question."

mitigating evidence at his sentencing hearing, it was "substantially likely that there would have been a different outcome."

¶ 16    Second, in the alternative, defendant alleged that his natural life sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant incorporated his previous allegations from his eighth amendment claim therein and asserted that his second claim was also "legitimate[] and clearly non-frivolous." Notably, defendant's proportionate penalties challenge did not reference his age. Instead, defendant's claim focused on the goals of the proportionate penalties clause, namely rehabilitation.

¶ 17    On November 15, 2019, the circuit court summarily dismissed defendant's postconviction petition in both an oral and written ruling.[2] This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant argues that the circuit court erred when it summarily dismissed his petition pursuant to both the eighth amendment of the U.S. Constitution and the proportionate penalties clause of the Illinois Constitution.

¶ 20                            A. Procedural Deficiencies

¶ 21    Before proceeding, we must first address the procedural deficiencies in defendant's brief and record on appeal. As we have noted previously, defendant has not filed a complete record with this court. In particular, the transcript from the sentencing hearing and the postconviction court's dismissal order are missing.

¶ 22    With regard to the sentencing hearing, although the State points out this deficiency in its brief, defendant did not address the issue in his reply brief or subsequently file a motion to

---

[2] The circuit court's written order summarily dismissing the petition is not included in the record, but rather, is attached to defendant's brief on appeal.

supplement the record.[3] The State, in a footnote in its brief, asserts that we can take "judicial notice" of defendant's sentencing proceedings. We decline to do so. As will be further discussed, the report of proceedings for defendant's sentencing hearing, in particular, contains "critical evidentiary material" which is "significant in the proper determination of the issues between the parties" here. *People v. Heaton*, 266 Ill. App. 3d 469, 476-477 (1994); contra *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010) (court allowed judicial notice of record in a separate pending appeal involving a co-defendant where there was an inconsistency between record on appeal and transcript of proceedings, which appeared to be "merely an error in compiling the record").

¶ 23    Additionally, the court's written dismissal order is attached to the defendant's brief as an exhibit.  However, "[a]ttachments to briefs on appeal, not otherwise before the reviewing court, cannot be used to supplement the record." *Heaton*, 266 Ill. App. 3d at 476.  We note that there has been no objection by the State to strike the exhibit.

¶ 24    It is well established that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of a complete record, it is "presumed that the order entered by the [circuit] court was in conformity with law and had a sufficient basis." *Id.* Accordingly, as we review the merits of defendant's claims on appeal, we will resolve any doubts resulting from the incompleteness of the record against him. See *id*.

---

[3] Since defendant's direct appeal, this case has seen at least three changes in representation on defendant's behalf seeking postconviction relief. We note current postconviction counsel's motion for access to the secured common law record, which we granted, and nothing in our records suggest non-compliance with that order. Even so, following briefing, we discovered omissions in the record. Thus, on May 6, 2022, we ordered defendant's counsel to file a supplemental record with this court within 30 days. Defendant failed to respond to this court's order. We take the record as we find it.

¶ 25    Finally, we note other issues with defendant's submissions to the court. Although not raised by the State, our review reveals noncompliance with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which sets forth the required format and contents of appellate briefs. In particular, defendant's reply brief is improperly formatted in that the margins measure substantially less than 1 inch on three sides, and the size of the text is condensed throughout. Rule 341 requires that margins measure 1 ½ inches on the left side and 1 inch on the other three sides, and that font size measure twelve point or larger. See Ill. R. S. Ct. R. 341(a) (eff. Oct. 1, 2020).

¶ 26    We admonish defense counsel that "[s]upreme court rules are not advisory suggestions, but rules to be followed." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. As such, "[t]his court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with Rule 341." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. However, "[t]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." (Internal quotation marks omitted.) *In re County Treasurer and ex officio County Locator*, 373 Ill. App. 3d 679, 683 (2007). Given that the deficiencies are confined to the reply brief and do not impede our review, we proceed to consider the merits of the appeal.

¶ 27                              B. Post-Conviction Hearing Act

¶ 28    As stated prior, defendant only challenges his sentence, which he claims violates his constitutional rights under the eighth amendment and under the proportionate penalties clause as applied to him. We review each in turn. Before proceeding, we set out the applicable legal principles which govern our review.

¶ 29    The Act provides a "procedural mechanism in which a convicted criminal" can collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his rights either under

the United States or Illinois constitutions, or both. *People v. Harris*, 224 Ill. 2d 115, 124 (2007); 725 ILCS 122-1 (West 2018). A postconviction proceeding in a noncapital case has three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). Our review solely concerns the first stage, where the State does not have the opportunity to raise any arguments against the petition. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). In the event that the petition moves to the second stage, the court may appoint counsel to represent the defendant if not otherwise represented at the time, as well as allow for the filing of an amended petition, and the State may move to dismiss or answer the petition. 725 ILCS 5/122-4, 122-5 (West 2018); *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 19. A petition may move to the third stage if its allegations contained therein and any accompanying documentation makes a substantial showing of a constitutional violation, which then requires an evidentiary hearing on the merits. 725 ILCS 5/122-6 (West 2018); *Zumot*, 2021 IL App (1st) 191743, ¶ 19.

¶ 30    To survive dismissal at the first stage, "the petition must only present the 'gist of a constitutional claim.' " *Boclair*, 202 Ill. 2d at 99-100 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 419 (1996)). However, a circuit court may summarily dismiss a petition within 90 days by written order if it "determines the petition is frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is considered frivolous or patently without merit when it "has no arguable basis either in law or fact," which has been interpreted to mean that the petition is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 11-12, 16. Additionally, a defendant's claim is considered frivolous or patently without merit if it is procedurally barred under either the doctrine of *res judicata* or forfeiture. *People v. Blair*, 215 Ill. 2d 427, 445 (2005); see also *Harris*, 206 Ill. 2d at 125 ("The scope of a [post-conviction] proceeding is limited to *** matters that have not been, nor could have been, previously

adjudicated."). In particular, "issues that were raised and decided on direct review are barred," as well as any issue "that could have been presented on direct review, but were not[.]" *People v. Taylor*, 237 Ill. 2d 356, 372 (2010).

¶ 31 In considering the petition at the first stage, the court may examine "the trial record, the court file of the proceedings in which the defendant was convicted, any action taken by an appellate court in such proceeding, any transcripts of such proceedings, and affidavits or records attached to the petition." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 58 (quoting *People v. Diehl*, 335 Ill. App. 3d 693, 700 (2002)); 725 ILCS 5/122-2.1(c) (West 2018). Accordingly, the circuit court may also summarily dismiss the petition if the defendant fails to attach the requisite affidavits, records, or other evidence required by the Act (*People v. Collins*, 202 Ill. 2d 59, 66 (2002)), or if the petition simply alleges "nonfactual and nonspecific assertions that merely amount to conclusions." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). A summary dismissal at the first stage constitutes a final judgment on the merits. 725 ILCS 5/122-2.1(a)(2) (West 2018).

¶ 32 Finally, when a postconviction petition is dismissed without an evidentiary hearing, our review is *de novo*. *Harris*, 224 Ill. 2d at 123. Under the *de novo* standard, the reviewing court performs the same analysis as a trial judge would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. Accordingly, on review, we owe no deference either to the trial court's judgment or its reasoning. *Id.*

¶ 33 C. Eighth Amendment Challenge

¶ 34 We first address defendant's claim that his natural life sentence violates the eighth amendment because, according to him, his status as a youthful offender at the time of the offenses, science and his individual circumstances now require the imposition of a lesser sentence.

¶ 35    The eighth amendment, applicable through the states through the fourteenth amendment, prohibits "cruel and unusual punishments," thus requiring the imposition of criminal sentences that are "graduated and proportioned." U.S. Const. amend. VIII; *People v. Dorsey*, 2021 IL 123010, ¶ 37 (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The current state of the law regarding eighth amendment claims begins with the United States Supreme Court's recent line of cases that provide heightened protections for juvenile defendants with regards to sentencing. Beginning with *Roper v. Simmons,* a case involving a 17-year-old defendant charged with capital murder and sentenced to death thereafter, the Supreme Court held that the eighth amendment prohibits the death penalty against juveniles who commit capital crimes. 543 U.S. 551, 555, 578-579 (2005). Continuing with *Graham v. Florida*, in a case involving a 16-year-old convicted of armed burglary, the Court held that the eighth amendment also prohibits mandatory life sentences without parole for juveniles who commit non-homicide offenses. 560 U.S. 48, 82 (2010). Finally, in *Miller v. Alabama*, in a case involving 14-year-old defendants, the Court held that the eighth amendment also prohibits the imposition of mandatory life sentences without parole for juveniles convicted of homicide. 567 U.S. 460, 479 (2012). The Court has further declared that the principles articulated in *Miller* apply retroactively to collateral review cases such as the one now before us. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

¶ 36    The Illinois Supreme Court has not only followed the lead of the federal courts on juvenile sentencing, but has further expanded such protections beyond mandatory life sentences. In particular, our supreme court held in *People v. Holman* that "life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." 2017 IL 120655, ¶ 40. Thus, although our supreme court has reiterated that a juvenile defendant may be sentenced to life

imprisonment without parole, it also emphasized that a trial court must first determine that the juvenile defendant's conduct demonstrated "irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation" prior to such imposition.[4] *Id.* ¶ 46. Such a determination is made following the sentencing court's assessment of what are commonly referred to as the "*Miller* factors," which include but are not limited to the juvenile defendant's: (1) chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) family and home environment; (3) degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) prospects for rehabilitation. *Id.* (citing *Miller*, 567 U.S. at 477-78).

¶ 37    Despite these extensions by our state court in light of the ever-evolving legal landscape regarding juvenile offenders and the criminal justice system, one principle has remained constant. The line of demarcation for *Miller*-based claims under the eighth amendment has been set at 18 years. See *Roper*, 543 U.S. at 574. This cutoff of age 18 has been reaffirmed by our supreme court in *People v. Harris*, 2018 IL 121932, ¶¶ 54-61, and has been consistently recognized and applied by our courts. See *People v. Green*, 2022 IL App (1st) 200749, ¶ 29 (collecting cases); see also *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 49 ("It is well established that offenders who are

---

[4] In *Jones v. Mississippi*, ___ U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021), the U.S. Supreme Court held that sentencing courts are not constitutionally mandated under the eighth amendment to make a finding of "permanent incorrigibility" before sentencing a juvenile defendant to life without parole. The Court expressly noted that states are not precluded from imposing any sentencing mechanisms they see fit in cases involving juvenile defendants convicted of murder, such as requiring extra factual findings, prohibiting sentences of life without parole for juveniles, or permitting appellate review based in proportionality for life-without-parole sentences. *Id.* at ___, 141 S. Ct. at 1323. Our supreme court has addressed *Jones* only in passing, suggesting, without more, that the holding of *Holman* in light of *Jones* is "questionable." *Dorsey*, 2021 IL 123010, ¶ 41.

18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases."); *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 28 ("By now, it's clear that the categorical findings made by *Miller* and its progeny under the federal eighth amendment apply only to juveniles.").

¶ 38    In his postconviction petition, defendant acknowledges that he was 18 years old, and that *Miller* only applies to juveniles 17 years of age or under. However, he maintains that *Miller*'s bright line rule does not "necessarily defeat" his specific eighth amendment claim. Citing *People v. Buffer*, 2019 IL 122327, *People v. House*, 2019 IL App (1st) 110580-B, and various legislative amendments discussed therein, he urges that the demarcation of 18 years is more flexible than case law suggests. Further, specifically as to him, defendant contends that the sentencing court could not have been aware of the science underpinning *Miller* and that it would have been persuasive mitigating evidence to potentially lead to a different outcome for him at sentencing.

¶ 39    Case law is clear, and we decline any departure from what is now settled law in this area. At the time of the offense and his sentencing hearing, defendant was at least 18 years old and "for sentencing purposes, the age of 18 marks the present line between adults and juveniles." *Harris*, 2018 IL 121932, ¶ 61. Moreover, defendant does not cite, and we are unaware of, any cases in this court or our supreme court that allow for *Miller*-based as-applied eighth amendment claims to proceed where defendant was not considered a juvenile. See *Buffer*, 2019 IL 122327, ¶¶ 1, 42 (16-year-old challenged *de facto* life sentence under the eighth amendment and was granted a new sentencing hearing).

¶ 40    Rather, as defendant's own petition implicitly acknowledges, such claims are typically addressed under a different theory, the proportionate penalties clause, which we discuss below. See *People v. Savage*, 2020 IL App (1st) 173135, ¶ 61 ("Although defendant raises an as-applied

challenge rather than a facial challenge, Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment."); see *House*, 2019 IL App (1st) 110580-B (19-year-old defendant's challenge to mandatory natural life sentence assessed under the proportionate penalties clause).[5] Thus, defendant's eighth amendment claim fails as a matter of law, and we affirm the circuit court's dismissal of defendant's petition on this basis.

¶ 41                    D. Proportionate Penalties Clause Challenge

¶ 42    Turning to defendant's second challenge, as our body of law has shown, young adult offenders, in reliance on *Miller* and its progeny, have also challenged their sentences as cruel and unusual punishment under the proportionate penalties clause of the Illinois Constitution. Here, defendant is no different. His petition incorporated by reference many of his allegations regarding his eighth amendment challenge and further alleged that "there is conflicting and ambiguous language in the case law, sometime within the same opinion, as to whether the [eighth] amendment is coextensive with [the proportionate penalties clause.]"

¶ 43    At the outset, when reviewing defendant's postconviction petition with regard to his proportionate penalties claim, we observe the following. First, defendant's proportionate penalties claim appears to be interwoven within his eighth amendment claim, rather than separated into two distinct ones. Specifically, defendant's eighth amendment allegations incorporate citations to authority solely limited to proportionate penalties challenges, such as *House*. Second, in the section

---

[5] *House* has since been vacated in part and reversed in part by our supreme court in *People v. House*, 2021 IL 125124. After we were instructed by our supreme court to assess defendant's proportionate penalties clause claim during second-stage postconviction proceedings in light of its opinion in *Harris*, we determined that defendant's sentence violated the proportionate penalties clause and ordered a new sentencing hearing. 2019 IL App (1st) 110580-B, ¶¶ 32, 77. Our supreme court disagreed, finding that there was an inadequate development of the evidentiary record to draw such a conclusion, and vacated our finding and remanded the matter back down for further development of the record. 2021 IL 125124, ¶¶ 31-32.

of his petition expressly designated for his proportionate penalties claim, defendant's challenge appears to focus more on defendant's right to "proportional sentencing" and the sentencing court's failure to assess his general rehabilitative potential. It does not at all address his age, although we acknowledge that the petition does expressly incorporate some of his eighth amendment allegations into his second claim. However, here on appeal, defendant's proportionate penalties claim appears to focus solely on his age as opposed to his rehabilitative potential.

¶ 44    Defendant is not incorrect that much of our case law regarding the proportionate penalties clause overlaps with eighth amendment jurisprudence. To begin, the proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. We have held that this clause provides greater protections against excessive punishment than the eighth amendment. See *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 35 ("The purpose of the *** clause is to add a limitation on penalties beyond those provided by the eighth amendment"); *People v. Clemons*, 2012 IL 107821, ¶ 40 (the proportionate penalties clause "which focuses on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision"); but see *People v. Patterson*, 2014 IL 115102, ¶ 106 (stating that the proportionate penalties clause is "co-extensive with the eighth amendment's cruel and unusual punishment clause").

¶ 45    A defendant's sentence runs afoul of the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). The clause requires balancing the goals of retribution and rehabilitation, which necessitates a careful consideration of all the factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d

96, 109 (2002). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and the community's changing standard of moral decency. *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 46 Even though an eighth amendment challenge based on *Miller* is effectively foreclosed for defendants over the age of 18, our supreme court has utilized *Miller's* rationale to open the door for young adults to demonstrate that their own specific characteristics and circumstances were so like those of a juvenile that the imposition of a life sentence, absent the necessary considerations established in *Miller*, would violate the proportionate penalties clause. In two cases on direct appeal, our court has acknowledged young adults' reliance on evolving neuroscience regarding brain development in juveniles as discussed in *Miller* to support an as-applied challenge under the proportionate penalties clause of the Illinois Constitution. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (19-year-old defendant sentenced to a term of natural life in prison); *Harris*, 2018 IL 121932, ¶ 48 (defendant, aged 18 years and 3 months, sentenced to 76 years in prison). The court instructed, however, that such claims would best be pursued through postconviction proceedings, as defendant seeks to do here. See *Thompson*, 2015 IL 118151, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 47 *Thompson* and *Harris* set forth a clear path for youthful offenders to pursue proportionate penalties clause challenges based on their youth and the *Miller* line of cases. However, our supreme court in those cases, and in any cases since, had no occasion to provide express guidance on the precise allegations necessary in an initial postconviction petition to pass first stage muster for these types of claims for youthful offenders. Nevertheless, we need not consider whether defendant has set forth sufficient allegations to state a gist of claim to require further proceedings because the incomplete record hinders our review of his claim.

¶ 48    Significantly, the transcript of defendant's sentencing hearing, which from the statement of facts contained in both the State and defendant's briefs appeared extensive and highly relevant to our inquiry, has not been submitted to this court on appeal. "To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). Mere allegations are insufficient for that purpose. What is required is a review of the underlying sentencing hearing, especially when as here, defendant's own petition references various portions of his hearing that were not included in the record on appeal. If, as the State argues, the trial court considered "*Miller*" factors, in that the sentencing court assessed the defendant's youth and its attendant characteristics, defendant's age-related proportionate penalties claim would fail. See, e.g., *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 52 (if the young adult properly pleads that his individual characteristics require application of *Miller*, trial court reviews whether the initial sentencing hearing complied with *Miller*); see also *Zumot*, 2021 IL App (1st) 191748, ¶¶ 35, 41 (court reviewed the underlying trial record with petition and supporting documentation to determine if sentencing court considered juvenile status and rehabilitative potential to be *Miller*-compliant to satisfy first stage requirements).

¶ 49    As we have stated, it is the appellant's burden "to present a record which fairly and fully presents all matters necessary and material for the decision of the questions raised." *Interstate Printing Co. v. Callahan*, 18 Ill. App. 3d 930, 932 (1974); see also *Foutch*, 99 Ill. 2d at 391-92. Defendant has failed to do so here, and we cannot rely on the parties' summary of the sentencing hearing to adequately review defendant's proportionate penalties claim as framed here on appeal.

See *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (a claim of error relating to a hearing or proceeding is not subject to review absent a report or record of the proceeding).

¶ 50 Further, to the extent that defendant's proportionate penalties claim as contained within the petition alleges that the sentencing court failed to consider his rehabilitative potential, we note that this issue was raised and disposed of on direct appeal. See *People v. Bell*, 1-92-2090 (unpublished order pursuant to Illinois Supreme Court Rule 23). Thus, even in the face of a complete record, we would deem further review of this issue as barred by *res judicata*. See *People v. Taylor*, 237 Ill. 2d 356, 372 (2010) ("Issues that were raised and decided on direct review are barred by the doctrine of *res judicata*[.]").

¶ 51 Thus, in accordance with *Foutch*, we must presume that the circuit court's summary dismissal of defendant's proportionate penalty claim "was in conformity with the law and had a sufficient factual basis." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005). On this record, we affirm the denial of defendant's petition on this basis as well.

¶ 52 In sum, we affirm the circuit court's dismissal of defendant's petition for postconviction relief.

¶ 53                                III. CONCLUSION

¶ 54 For the reasons stated, we affirm the judgment of the circuit court.

¶ 55 Affirmed.