2022 IL App (1st) 172269-UB

FIFTH DIVISION
February 4, 2022

No. 1-17-2269

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 96 CR 5317 05 |
| | ) | |
| ANTHONY SPAULDING, | ) | Honorable Stanley J. Sacks, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Harris and Mikva concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held:* Defendant's 60-year sentence, with eligibility for day-for-day good-conduct credit, did not amount to a *de facto* life sentence; the trial court properly considered all *Miller* factors in resentencing defendant; affirmed.

¶ 2    Pursuant to the supervisory order issued by the Illinois Supreme Court in *People v. Spaulding*, No.126548 (Nov. 24, 2021), we vacated our previous order and now reconsider our decision in light of *People v. Dorsey*, 2021 IL 123010.

¶ 3    Defendant, Anthony Spaulding, was convicted in 1997 of two counts of first degree murder and two counts of attempted armed robbery in connection with the shooting deaths of

Malinda Gavin and Ray Bowen. The incident occurred on August 28, 1994, when defendant was 16 years old. Defendant was sentenced to a mandatory term of life in prison for the murder convictions and concurrent 15-year sentences for the attempted armed robbery convictions. Following the decision in *Miller v. Alabama*, 567 U.S. 460 (2012), defendant filed a successive postconviction petition arguing that his natural life sentence was unconstitutional because he was a juvenile at the time of the offense. Defendant was granted a new sentencing hearing. Following the new sentencing hearing, defendant was sentenced to concurrent terms of 60 years' imprisonment. The trial court denied defendant's motion to reconsider the sentence, and this appeal ensued. For the reasons below, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5     The following evidence was presented at defendant's bench trial. On August 29, 1994, the victims, Gavin and Bowen, were in a parked car, "half naked." Defendant walked past the car with a group of his friends. One of them suggested that they "fuck with" the people inside. Defendant and his friends demanded money from the victims. When they refused, defendant fired shots into the car. Both Gavin and Bowen were killed. Defendant received mandatory concurrent sentences of natural life imprisonment for the murders, and concurrent terms of 15 years' imprisonment for the attempted armed robbery convictions.

¶ 6     In 2012, the United States Supreme Court decided *Miller*, which held that the Eighth Amendment prohibits mandatory sentences of life in prison without the possibility of parole for juvenile homicide offenders. 567 U.S. at 479. Subsequently, defendant filed a successive postconviction petition challenging his natural life sentence under *Miller*. The trial court granted defendant a new sentencing hearing to consider the *Miller* factors.

¶ 7    A new sentencing hearing for defendant and his codefendant was held before the same judge that sentenced them in 1997.

¶ 8    Former Illinois Department of Corrections (IDOC) director Salvador Godinez appeared as a mitigation witness. Godinez was hired as a consultant to evaluate defendant's prison record and provide an assessment of his rehabilitative potential. Godinez testified that defendant had no record of violence, drug use, or gang activity in prison. Given defendant's offense and sentence, defendant had the lowest possible security score.

¶ 9    Godinez testified that defendant's status as a person serving life in prison made him ineligible for most prison jobs, but defendant was employed as a painter, law library clerk, teacher's aide, print show worker, and barber. Defendant also worked as a tutor helping other inmates.

¶ 10    Defendant's uncle testified that he was able to "re-start" his relationship with defendant after realizing defendant was sincere in his remorse and desire to contribute to society.

¶ 11    Defendant addressed the court, stating he took "full responsibility" for the offense and that he was "truly sorry." Defendant stated that he thought about the victims all the time and would mentor troubled youth upon his release.

¶ 12    Defense counsel noted that defendant's father became addicted to cocaine and sold stolen goods out of the house when defendant was a child. Defendant was sexually abused by a female babysitter for a period of three to four years, beginning when defendant was nine years old.

¶ 13    Defense counsel also stated that defendant was valedictorian of his eighth-grade class, but that the school was shut down around the same time defendant's family life was destabilizing. As a result, defendant was forced to walk through two different gang territories to

reach a different school we he lacked structure and support. Defendant joined the Gangster Disciples and began abusing alcohol and marijuana on a regular basis.

¶ 14    The State submitted victim impact statements from Gavin's and Bowen's families that had been submitted at defendant's original sentencing hearing. The State read those letters into the record. Gavin's mother stated in her letter that Gavin was her only child and had graduated from nursing school. She thinks of her only child every single day and loses sleep every night. She has relived the night of the murder over and over, thinking of the fear her daughter must have felt in the last few moments of her life. Gavin's mother stated that she always looked forward to becoming a grandmother and a major part of her is gone forever. No mother expects to bury a child. She stated that defendant's and codefendant's mothers can still visit them in prison and give them a kiss. Instead, she has to visit her daughter at a graveyard.

¶ 15    The second letter that was read was authored by Bowen's parents. They stated that Bowen was the father of a four-year-old at the time of his murder. He loved his daughter very much. Bowen and Gavin were two people who cared about everybody and everything. Bowen's parents will never forget the day they got the news of their deaths. The pain was so great, and it took them weeks to come to terms with the fact that they were gone forever. They asked that defendant and codefendant be imprisoned for life.

¶ 16    The State then asserted, "The position of the State's Attorney's Office as to these particular defendants based on the mitigation we've received would be a term of imprisonment that would not amount to a *de facto* life sentence." The trial court stated, "I'll certainly consider it."

¶ 17    Before sentencing defendant, the trial court noted that it had reviewed defendant's mitigation plan, presentence investigation report (PSI), IDOC feedback, and letters from both

4

family and professionals. The trial court also noted that it had presided over defendant's bench

trial and was familiar with the facts of the case. The trial court specifically found that defendant

was not "irretrievably depraved," and therefore would not be sentenced to life in prison again.

The trial court then detailed the crime, focusing on the brutality of the shooting and the

defenselessness of the victims. The trial court then stated that "sorry just doesn't cut it" and

noted that the victims did not get a chance to live, while defendant and codefendant still did. The

trial court then stated,

> "These two gentlemen are coldhearted murderers, as simple as that. They
>
> have changed in the last give or take 20 years while they've been in custody and
>
> changed much for the better. Had they been 18 instead of 16 back at the time of
>
> these murders, we'd be talking about something besides life in prison most likely.
>
> As I said before, however, the Court cannot find that they're both irretrievable, as
>
> the *Miller* case says.
>
> \*\*\*
>
> I am certainly going to consider that both men have done excellently well
>
> while they've been in custody. Maybe being locked up for a long time has
>
> benefited them.
>
> \*\*\*
>
> We're hearing all this evidence about [defendant] and [codefendant]. And
>
> it's sort of like on August 29, 1994, they were one person. They've
>
> metamorphosed into two different people now in 2017. And, oh, by the way,
>
> there's a little footnote to history, they savagely murdered Ray Bowen and
>
> Malinda Gavin. Like they're a little footnote to history. It's all about

5

[codefendant] and [defendant]. I've considered all of it in that respect. They're not

the only people in this case I've got to consider. I've got to consider Malinda

Gavin and Ray Bowen. They're the ones who were murdered by these two men in

a cold, calculated manner. And to hear them described as 'young boys' is a little

hard to accept. They were young, but this was a crime that warrants something

other than, 'go home today guys, just don't do it again.'

    \*\*\*

This is a crime that shocks the conscience of a civilized society. Two

young guys who are now mature men go out and kill two people for nothing,

absolutely nothing at all."

¶ 18    The trial court sentenced defendant and codefendant to 60 years in prison for each murder, to run concurrently. The court stated, "a sentence [for] a crime that took place back in '94 before truth in sentencing, it's day-for-day credit. So on a sentence of 60 years they'd do 30 calendars, approximately, maybe a little less." The court noted, "They get credit for the 20 or 21 years they've been in custody so far," and stated they would be out in eight or nine years. The trial court added that it considered defendant and codefendant's age, and "everything the lawyers on both sides argued." Defendant moved to reconsider his sentence, and the trial court denied the motion. Defendant now appeals.

¶ 19                    II. ANALYSIS

¶ 20    We first address defendant's argument that his new sentence of 60 years' imprisonment amounts to a *de facto* life sentence and therefore must be vacated as required by *Miller* and its progeny. In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition

on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. The Supreme Court stated that minors are constitutionally different from adults for sentencing purposes, being less mature and responsible, more impulsive, and more vulnerable to negative influences and peer pressure than adults, and not having the fully-formed character of adults so that their actions do not necessarily indicate irreversible depravity. *Id*. at 471-74. The Court continued, "[w]e therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id*. at 479. The Court noted that while "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon, *** we do not foreclose a sentencer's ability to make that judgment in homicide cases". Still, a "judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id*.

¶ 21    Our supreme court in *People v. Holman*, 2017 IL 120655, considered "what it means to apply *Miller*" and stated:

"[A] juvenile defendant may be sentenced to life imprisonment without parole,

but only if the trial court determines that the defendant's conduct showed

irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond

the possibility of rehabilitation. The court may make that decision only after

considering the defendant's youth and its attendant circumstances. Those

characteristics include, but are not limited to, the following factors: (1) the

juvenile defendant's chronological age at the time of the offense and any evidence

of his particular immaturity, impetuosity, and failure to appreciate risks and

consequences; (2) the juvenile defendant's family and home environment; (3) the

juvenile defendant's degree of participation in the homicide and any evidence of

7

familial or peer pressures that may have affected him; (4) the juvenile defendant's

incompetence, including his inability to deal with police officers or prosecutors

and his incapacity to assist his own attorneys; and (5) the juvenile defendant's

prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46; see also 730 ILCS

5/5-4.5-105(a) (West 2016) (codifying these factors).

¶ 22    The Supreme Court held in *Montgomery v. Louisiana*, 136 S. Ct. 718, 735 (2016)

(quoting *Miller*, 567 U.S. at 465), that "[a] hearing where 'youth and attendant characteristics'

are considered as sentencing factors is necessary to separate those juveniles who may be

sentenced to life without parole from those who may not." The Court stated:

"The [*Miller*] Court recognized that a sentencer might encounter the rare juvenile

offender who exhibits such irretrievable depravity that rehabilitation is impossible

and life without parole is justified. But in light of children's diminished capacity

for change, *Miller* made clear that appropriate occasions for sentencing juveniles

to this harshest possible penalty will be uncommon." (Internal quotation marks

omitted.) *Id*. at 733-34.

¶ 23    Our supreme court subsequently determined that *Miller*'s holding and rationale applied

not only to juvenile defendants who received mandatory life sentences without the possibility of

parole but also to juvenile defendants sentenced "to a mandatory term of years that is the

functional equivalent of life without the possibility of parole," *i.e*. a *de facto* mandatory life

sentence (*People v. Reyes*, 2016 IL 119271, ¶ 9), and "to discretionary sentences of life without

parole" (*Holman*, 2017 IL 120655, ¶ 40). More recently, our supreme court has defined a *de*

*facto* life sentence for a juvenile offender as one that is greater than 40 years. *People v. Buffer*,

2019 IL 12237, ¶¶ 41-42 (stating that "a prison sentence of 40 years or less imposed on a

juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment" and because the "defendant's sentence was greater than 40 years," he received a *de facto* life sentence).

¶ 24 Here, defendant argues that the trial court's imposition of a 60-year sentence amounted to a *de facto* life sentence. The State maintains that defendant's 60-year sentence was not a *de facto* life sentence because he was sentenced before "truth-in-sentencing," which requires those convicted of first degree murder after June 1998 to serve 100% of their imposed sentences. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2008). Because defendant was sentenced before June 1998, defendant is entitled to day-for-day good-time credit. See 730 ILCS 5/3-6-3(a)(2) (West 1996) (the prisoner "shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court.") As a result, defendant, who has been incarcerated since 1996, could be eligible for release from prison in September 2025. The State contends that because he is eligible for day-for-day credit, and therefore only likely to serve 30 years of his 60-year sentence, he did not receive a *de facto* life sentence.

¶ 25 Our supreme court has recently addressed this exact issue. In *Dorsey*, the court noted that the statutory scheme applicable to defendant "requires that a person receive 'one day of good conduct credit for each day of service in prison,' where each day of credit must 'reduce by one day the inmate's period of incarceration set by the court.' " 2021 IL 123010, ¶ 51. The court continued:

"This day-for-day credit scheme is designed to encourage rehabilitation and enable an offender to be released after he serves half of the determinate sentence. It allows a predictable, fairly accurate assessment at the time of sentencing of the

ultimate length of imprisonment. Prisoners know that they are directly accountable for their successes or failures of self-control and have a direct stake in maintaining good order and discipline while incarcerated. The statutory credit scheme provides prisoners with incentives to conform their behavior to what society will accept. Thus, an offender sentenced under the statutory scheme providing for day-for-day credit – who conforms his conduct to the prison rules – can demonstrate growth and rehabilitation, thereby procuring his own release after serving half of the judicially imposed prison term." (Internal quotations omitted.) *Id*. ¶ 52.

¶ 26    The court concluded, "[w]e find, then, that the statutory good-conduct scheme in play here provides defendant 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before he spends more than 40 years in prison, which this court in *Buffer* determined as the line for a *de facto* life sentence based on an extrapolation from the legislative determination." *Id*. ¶ 65. We therefore are likewise compelled to conclude that defendant's sentence, which offers an opportunity for release after serving 30 years in prison, is not a *de facto* life sentence in violation of the eighth amendment.

¶ 27    Having found that defendant's sentence is not a *de facto* life sentence, we now address defendant's argument that the trial court failed to adequately consider the *Miller* factors during the resentencing hearing. Specifically, defendant contends that the trial court failed to mention defendant's age as a mitigating factor and did not consider defendant's troubled childhood or rehabilitation while in prison.

¶ 28    A reviewing court will not alter a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court abuses its discretion

in determining a sentence where the sentence is greatly at variance with the spirit and purpose of the law or if it is manifestly disproportionate to the nature of the offense. *Id*. In the absence of evidence to the contrary, we presume that the sentencing court considered all mitigating evidence presented. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51.

¶ 29    Illinois has now codified the *Miller* factors. Section 5-4.5-105(a) of the Unified Code of Corrections (Code) provides that when a person under 18 years of age commits an offense, the trial court at sentencing shall consider the following factors in mitigation: (1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any; (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences; (3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma; (4) the person's potential for rehabilitation or evidence of rehabilitation, or both; (5) the circumstances of the offense; (6) the person's degree of participation and specific role in the offense, including the level of planning by the person before the offense; (7) whether the person was able to meaningfully participate in his or her defense; (8) the person's prior juvenile or criminal history; and (9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate, although, if a defendant chooses not to make a statement on advice of counsel, a lack of an expression of remorse shall not be considered as an aggravating factor. 730 ILCS 5/5-4.5-105(a) (West 2016).

¶ 30    Here, the resentencing hearing was conducted specifically for the purpose of considering the *Miller* factors because defendant was 16 years old at the time of the offense. At the beginning of the sentencing hearing, the trial court noted that it had reviewed defendant's mitigation plan,

the PSI, IDOC feedback, and letters from both family and professionals. It also noted that it had presided over defendant's bench trial and was familiar with the facts of the case.

¶ 31    IDOC director Godinez testified that defendant's good behavior indicated rehabilitative potential. Defendant's uncle testified that defendant exhibited remorse and personal growth while incarcerated. Evidence was presented that defendant's father was addicted to cocaine and sold stolen goods out of house, defendant was sexually abused by a babysitter, and he joined a gang at 13 years old.

¶ 32    The trial court described the nature of the crime, stating that the victims of the shooting were defenseless. It noted that while defendant and codefendant had changed for the better over the last 20 years while they were in custody, the victims were murdered in a "cold, calculated manner," and the crime "shocks the conscience of civilized society." The trial court added that it considered defendant and codefendant's age and "everything the lawyers on both sides argued."

¶ 33    Looking at the entirety of the resentencing hearing, we find that the trial court properly considered the evidence presented on each of the *Miller* factors. Although the trial court did not specifically identify which factors it considered in determining defendant's sentence, it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential. *People v. Brazziel*, 406 Ill. App. 3d 495, 499 (1993). A trial court is not required to specify on the record the reasons for the sentence imposed, nor is it required to recite and assign value to each factor presented at the sentencing hearing. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 22; *People v. Baker*, 241 Ill. App. 3d 495, 499 (1993).

¶ 34    To the extent that defendant argues that the trial court gave more weight to the severity of the crime than the mitigating factors, we note that "because the most important sentencing factor is the seriousness of the offense, the court is not required to give greater weight to mitigating

12

factors than to the seriousness of the offense." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. Accordingly, we find no abuse of discretion.

¶ 35    We granted defendant's motion to cite additional authority, but find that his reliance on *People v. Zumot*, 2021 IL App (1st) 191743, is without merit. In *Zumot*, the defendant was found guilty of first degree murder and sentenced to 45 years in prison. *Id.* ¶ 1. His conviction was affirmed on appeal. *People v. Zumot*, No. 1-05-1068 (2009). The defendant filed a pro se postconviction petition, arguing that the trial court failed to properly consider his youth and attendant circumstances, which was summarily dismissed. *Id.* ¶ 2. On appeal from the dismissal of his postconviction petition, this court rejected the argument by the State that the trial court did in fact consider the *Miller* factors when it sentenced the defendant in 2004 – years before *Miller* was decided – simply because "information touching on those factors was included in the PSI report submitted at sentencing." *Id.* ¶ 40. We stated that "being aware of evidence relevant to the *Miller* factors is wholly distinct from considering those factors as mitigating, or carefully considering the prospect of a defendant's rehabilitative potential." *Id.*

¶ 36    In the case at bar, the resentencing hearing was for the sole purpose of presenting evidence on the *Miller* factors. The trial court did not merely review defendant's PSI. As discussed above, the court heard extensive evidence on each of the *Miller* factors and we have no reason to believe it abused its discretion when resentencing defendant.

¶ 37                                III. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.